Margaret M. SPIRITO,
Plaintiff-Appellant,

v.

TEMPLE CORPORATION d/b/a
Munster-Med-Inn-ECF,
Defendant-Appellee.

No. 3–783A210.

Court of Appeals of Indiana,
Third District.

Aug. 2, 1984.

William F. Carroll, Carroll & Donaldson, Crown Point, for plaintiff-appellant.

Daniel A. Gioia, Robin D. Pierce, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for defendant-appellee.

GARRARD, Judge.

Margaret Spirito was a convalescent patient at a facility operated by Temple Corporation d/b/a Munster-Med-Inn-ECF (Med-Inn) following a stroke and surgery performed to relieve pressure caused by the stroke upon the brain. While a resident at Med-Inn Spirito suffered a fracture of the left hip. She subsequently brought

this action against Med-Inn asserting negligence on its part in administering care.[1] The case was tried by jury and a defendant's verdict was returned. In this appeal Spirito asserts the court erred in giving instructions on contributory negligence and incurred risk. She contends the verdict was not sustained by the evidence and was contrary to law.

The evidence adduced at trial disclosed that Mrs. Spirito fell twice during the time she was at Med-Inn. As a consequence of the stroke, at the time she entered Med-Inn Mrs. Spirito suffered a paralysis on her left side. She was not able to "get up and be around" at that time. She needed assistance in sitting up and standing and received therapy at Med-Inn to aid her recovery. She also needed help while eating and had to use a bed pan. She was, however, mentally alert.

On February 17, 1977, some eight days after her admission to Med-Inn, Mrs. Spirito fell in the bathroom. She had been taken to the toilet in a wheelchair by a nurse's aide and transferred to the toilet seat. According to Mrs. Spirito the aide told her, "I have to go down the hall a minute, so when you finish, pull the rope and someone, someone will be right in." She testified that when she reached for the rope (which would illuminate a light at the nurse's station) she fell from the seat. A report of this incident, admitted in evidence without objection, stated, "Patient on commode in bathroom. Tried to get back to wheelchair without help, even though had been told not to. Found sitting on floor. No apparent injury. Incident report made." Although Mrs. Spirito expressed pain following this fall, an x-ray taken revealed no fracture or dislocation.

Subsequently, on March 25, 1977, Mrs. Spirito fell again. On this occasion she had been to the bathroom and was sitting on a shower chair, which is described as a chair on wheels with a seat resembling a toilet seat. The chair can be positioned over a toilet so that a patient can use the toilet without being transferred to and from a wheelchair. The chair has wheels which can be locked but has no straps with which to restrain a patient. Mrs. Spirito testified that the aide returned her to her room on the chair but then left saying she would be back in a few minutes. Mrs. Spirito thought that she had been left unattended "for sure one hour" before she fell. On the other hand, the nurse's aide who found her on the floor after hearing her cry out stated that only five minutes had elapsed. There was no direct testimony as to how this fall occurred. All Mrs. Spirito said was that "I was on the floor after that," and there were no witnesses to the event. She was found lying on the floor next to the bed with her head facing towards "where your pillow would lie" and her feet toward the end of the bed. Following this experience x-rays revealed a fracture of the neck of the left femur.

Mrs. Spirito testified that the shower chair was uncomfortable to sit in, but Med-Inn's witnesses testified to the contrary. In addition, we note that according to Med-Inn's records Mrs. Spirito was responding to therapy and by March 21 they recorded that her sitting balance was excellent and her standing balance normal. We also note that while Mrs. Spirito contended at trial that Med-Inn should have used a posey vest upon her as a restraining device while she was in the shower chair, the Med-Inn administrator testified that this would not be normal practice.

■ Upon this evidence it is asserted that the court erred by instructing the jury on Med-Inn's affirmative defenses of incurred risk and contributory negligence. The only objection made to the two instructions in question is that there had been no evidence introduced to support the giving of the instructions.

1. Spirito's complaint sounded in both tort and breach of contract for care. It alleged numerous wrongful acts on the part of Med-Inn including scolding her and failing to provide prompt and adequate assistance for her bathroom needs. However, since her argument on appeal addresses only her fractured hip and two falls that occurred, we limit our discussion to those matters.

It is well recognized, of course, that it can be error for the court to instruct the jury upon an issue or principle of law in the absence of any evidence introduced at the trial to support the giving of the instruction. *Mullins v. Bunch* (1981), Ind., 425 N.E.2d 164; *Hoesel v. Cain* (1944), 222 Ind. 330, 53 N.E.2d 165, *reh. denied* 222 Ind. 330, 53 N.E.2d 769; *Buchanan v. Morris* (1926), 198 Ind. 79, 151 N.E. 385. Accordingly, it has often been held proper to refuse instructions which are unsupported by the evidence. *State v. Ingram* (1981), Ind., 427 N.E.2d 444; *Dahlberg v. Ogle* (1978), 268 Ind. 30, 373 N.E.2d 159.

Here the court gave the instructions so the question we must determine is whether there was any evidence to support them.

Spirito argues that no evidence justified the instructions concerning the second fall. Med-Inn responds correctly that throughout the trial Spirito claimed that both falls contributed to the damages she was seeking. Indeed, Mrs. Spirito maintained in her own testimony that the fracture occurred from the first fall.

No effort was made to limit application of the instructions to specific events and no objection was taken to them on that basis.[2] Accordingly, if they were applicable to the issues and pertinent to the evidence, they were properly given.[3] *Schlarb v. Henderson* (1936), 211 Ind. 1, 4 N.E.2d 205, 208.

■ Here the issues included whether Med-Inn was guilty of negligence and whether Spirito was guilty of incurred risk or contributory negligence concerning the first fall.

There was admitted in evidence without objection the report that she fell while trying "to get back to [her] wheelchair without help, even though [she] had been told not to."

Where hearsay evidence is admitted without objection its probative value is for the jury to determine. *Klinger v. Ottinger* (1939), 216 Ind. 9, 22 N.E.2d 805, 809. *See also Hinshaw v. Waddell* (1957), 128 Ind. App. 67, 142 N.E.2d 640; *Fetter v. Powers* (1948), 118 Ind.App. 367, 78 N.E.2d 555.

■ The evidence was sufficient to support the giving of the instructions. *Schlarb, supra; Pennsylvania Ice & Coal Co. v. Elischer* (1939), 106 Ind.App. 613, 21 N.E.2d 436.

■ In addition, it must be noted that even though it is error to give an instruction which has no support in the evidentiary record, the error is not reversible unless the complaining party was prejudiced thereby. *Baker v. Mason* (1968), 253 Ind. 348, 242 N.E.2d 513; *Hoesel v. Cain* (1944), 222 Ind. 330, 53 N.E.2d 165. The court's reasoning in these situations is that where the instruction presents a correct statement of the law,[4] no prejudice will result from the jury obeying the instruction, e.g., they will find no contributory negligence where the instruction properly defines the applicable law and there is, in fact, no evidence of contributory negligence in the record. *Indianapolis T. & T. Co. v. Peeler* (1919), 69 Ind.App. 645, 122 N.E. 600. *See also Baker v. Mason, supra* (sudden emergency); *Evansville City Coach Lines, Inc. v. Atherton* (1962), 133 Ind.App. 304, 179 N.E.2d 293 (negligence). As in *Peeler*, Mrs. Spirito was unharmed by the court's instruction on contributory negligence which correctly stated to the jury the law on that subject.

Preferring the form of incurred risk instruction contained in Indiana's Pattern Jury Instructions, we need not decide whether the instruction here given properly and fully stated the law so as to make any

2. Of course, the parties were free to discuss the application of the instructions in final argument.

3. No objection was made at trial that the instructions did not correctly state the law, which is the other prerequisite for giving an instruc-

tion. *See, e.g., Indianapolis Horse Patrol, Inc. v. Ward* (1966), 247 Ind. 519, 217 N.E.2d 626.

4. Typically, such instructions simply present the appropriate legal principle as an abstract statement of law.

error in its being given harmless. It is sufficient to say the evidence supported an instruction, and no objection was taken to its content.[5]

■ Mrs. Spirito also contends the verdict was contrary to the evidence and contrary to law. It is a sufficient answer to this question to affirm that the evidence was conflicting as to the negligence of Med-Inn on the incidents in question. Since we may neither reweigh the evidence or redetermine witness credibility, we must affirm the judgment.

Affirmed.

STATON, P.J., and HOFFMAN, J., concur.

5. Appellant's argument, in part, appears to now challenge whether this instruction correctly stated the law. That issue was not preserved for appeal.